DONOVAN v. UNITED STATES.

ROSSITER v. SAME.

BEALS v. SAME.

Nos. 4622, 4624, 4670.

Circuit Court of Appeals, Third Circuit.
Dec. 15, 1931.

Rehearing Denied Jan. 18, 1932.

William T. Connor, of Philadelphia, Pa., for appellant Beals.

Charles J. Margiotti, of Pittsburgh, Pa., W. Pitt Gifford, of Erie, Pa., Joseph Richardson, of Pittsburgh, Pa., and William T. Connor and John R. K. Scott, both of Philadelphia, Pa., for appellant Rossiter.

Francis B. Quinn, of Erie, Pa., for appellant Donovan.

Louis E. Graham, U. S. Atty., and James I. Marsh, Asst. U. S. Atty., both of Pittsburgh, Pa.

Before WOOLLEY and DAVIS, Circuit Judges and JOHNSON, District Judge.

WOOLLEY, Circuit Judge.

Early in the morning of September 25, 1929, Stanley Wells and Lester Beals were engaged in transporting liquor across Lake Erie and smuggling it into the United States in violation of section 593 (b) of the Tariff Act of 1922 (19 USCA § 497). They were arrested by United States Coast Guards and put in jail at the city of Erie, Pennsylvania.

Later they were released on Wells giving a cash bail of four thousand dollars and Beals a property bail for their appearance at the next term of the District Court. Thus far they were represented by Samuel Y. Rossiter, an attorney of Erie, who, contemplating absence abroad, advised them to procure counsel in Pittsburgh. This they did through Joseph D. Donovan, a relative of one of the prisoners. In due course the Grand Jury returned a true bill containing two counts; one for smuggling, the other for conspiracy. The Pittsburgh attorneys advised their clients that the conspiracy count might not be pressed if they would plead guilty to the smuggling count and that the sentence would probably be imprisonment not exceeding sixty days. Wells was disinclined to be imprisoned for any term; therefore an arrangement was made with one James Patrone whereby, for a consideration, he agreed to impersonate Wells, receive his sentence and serve his term. In due course Beals and Patrone, the latter substituting for Wells, signed pleas of guilty to the charge of smuggling and appeared at the bar of the court for sentence. The judge, in complete ignorance of what was being done, imposed sentence upon Beals and Patrone in the name of Wells. The judge, still being kept in the dark, made an order upon motion of one of Wells' attorneys that his cash bail of four thousand dollars be returned to him. It was paid to his attorney.

Who did this thing? The grand jury started the answer to this question by indicting Wells, Patrone, Beals, Donovan and Rossiter for conspiring among themselves, and with others unknown, to commit offenses against the United States, (1) by harboring or concealing a person for whose arrest a warrant had been issued, (2) by concealing the true identity of a person arrested for violation of the law, (3) by obstructing and impeding the United States in the exercise of its sovereign powers; and for the substantive offenses (1) of making to the district judge a false claim for the return of Wells' bail money, and (2) of defrauding the United States thereof.

Wells disappeared. After Patrone, who later became the government's witness, had pleaded guilty, the case went to trial. The jury answered the question—who perpetrated this fraud—by finding Donovan, Beals and Rossiter guilty.

The case is here on appeals by these three defendants, presenting assignments of error

194

in the number usual in criminal cases, all of which, save one, after full consideration are disposed of adversely to the appellants for lack of substance. That one is grounded on the court's denial of a motion made for each defendant for a directed verdict of acquittal. We have therefore only to consider whether the evidence as to each defendant required the submission of his case to the jury, or, stated differently, looking at the case from the record as made, whether the evidence sustains the verdict.

■ Undoubtedly the main actors in this fraud upon the court and the administration of justice were Wells and Donovan. While Wells, who avoided trial, may in law be presumed innocent until proved guilty, he cannot in fact be presumed to be ignorant of the part he played with Donovan in arranging the substitution of Patrone for himself and of being absent when sentence intended for him was imposed upon Patrone. It is equally certain that Donovan, who was even more active, knew all that Wells knew. But Donovan's conviction does not rest on his knowledge of the doings of others but on what he himself did. He collaborated with Wells in arranging the substitution and took such a part that he became known to the group as the "fixer." The evidence of his activities justified this appellation and was sufficient in quantity and quality to warrant the jury in finding that he conspired with Wells as charged by the indictment. It will be enough to say, without going into details, that the evidence required the submission of the case against Donovan and supports his conviction.

■ Beals' case was precisely the opposite of that against Donovan. Though, doubtless, he knew much of what was going on and when he and Patrone stood up for sentence he certainly knew that the sentence was imposed not upon Wells, his fellow prisoner, but upon another in Wells' name, he was, oddly enough, not an actor in the fraud. Whether through lack of interest or through fear, his part was passive. We find no evidence that he did anything to further the scheme or, indeed, to deceive the court other than to stand mute. He possessed guilty knowledge in full measure, and it was, without doubt, his moral duty to speak and apprise the court of the fraud being perpetrated. Yet, reprehensible as was his silence, he was here tried and convicted, not for having guilty knowledge and not for his failure to disclose it in violation of section 146 of the Criminal Code (18 USCA

§ 251), but for conspiring to do three specific things. We fail to find any evidence of acts on his part either in originating or furthering these conspiracies, just as we fail to find any evidence of a motive on his part for entering into such conspiracies. So far as the evidence discloses he merely stood by and watched the game with indifference. We are required to hold that Beals' conviction is not sustained by evidence.

Rossiter's situation was similar to that of Beals, differing on the facts however in that there was more evidence against Rossiter and differing in the decision according as the evidence is, or is not, equally consistent with his innocence as with his guilt.

Rossiter, a member of the Erie County bar, was indicted with all the others on all counts. He was tried and convicted on the theory that he was attorney for Wells and Beals and as such participated in the fraudulent substitution of Patrone for his client Wells.

Much of the evidence was in sharp conflict, but in view of the verdict of the jury we shall assume as true all the evidence the government produced.

Rossiter was undoubtedly attorney for Wells and Beals in obtaining their release on bail when, following their arrest, they were lodged in jail at Erie. It is equally certain that upon their release he withdrew as their attorney, stating that because of a contemplated trip to Europe he could not represent them at the trial and recommended that they retain counsel in Pittsburgh. That Wells and Beals employed two Pittsburgh attorneys to conduct their case is not disputed; nor is it disputed that these attorneys alone acted for Wells and Beals until at least the day before sentence, when occurred the first incident on which the government relies to prove that Rossiter again became attorney for Wells and Beals. Thus, on the government's testimony, there was a period when Rossiter took no part in the case, and certainly there was no evidence that he took part in or knew of the deal Wells and Donovan made with Patrone for the substitution. According to his own story, he reappeared in the Wells' and Beals' matter the day before sentence in this way:

Knowing the efforts on the part of the Pittsburgh attorneys for Wells and Beals to get them off on pleas of guilty under the count for the minor offense and having three clients of his own (in no way connected with the Wells' and Beals' case) for whom he desired, if possible, to make the same ar-

rangement and have them receive a like sentence, Rossiter asked Donovan to let him know when it was definitely settled that Wells and Beals would be allowed to plead guilty of the minor offense. On the government's evidence Donovan, the day before the sentence, telephoned Rossiter that "It was O. K." and to bring his clients from Erie to Pittsburgh the next day. This message Rossiter explains was in response to his request of Donovan to let him know when the Wells' and Beals' matter was definitely fixed. Rossiter's next contact with the Wells' and Beals' case occurred the next day when, with his three clients, he met, in the corridor outside the court room in Pittsburgh, the Wells' and Beals' group consisting of Wells, Donovan, Patrone, the two Pittsburgh attorneys, and later Beals. After the usual morning greetings Rossiter left them · for some purpose. Presently he returned, and, when approaching the court room door, said: "Come on inside and get this thing over with." Whether he was addressing his own three clients or the Wells' and Beals' group is not clear. Everybody went into the court room where, in due course, Rossiter's clients were sentenced and Beals and Patrone, the latter substituting for Wells, were sentenced. While Rossiter took no part in the Beals-Patrone proceedings, he was present all the time; and there is no doubt that he could have seen and heard all that transpired. It was permissible for the jury to find that he did see the substitution and did hear the court impose sentence on the substitute. Like Beals he stood mute. After sentence, one of the Pittsburgh attorneys asked for and obtained the court's permission to withdraw Wells' bail money. On the money being obtained, Wells, Donovan, the prisoners in charge of bailiffs, and all the lawyers, including Rossiter, went to rooms previously reserved in a hotel and had lunch, at which it was testified that Rossiter said: "We have put it over." Whether having put it over for his own clients in obtaining the minimum sentence or deceiving the court by the substitution is not made clear by anything else that was said. At the lunch the bail money was "divided." Beyond the Pittsburgh attorneys taking their fees there was no evidence of what the division consisted and none that Rossiter got any of it. Nor was there evidence that Rossiter was attorney for Wells and Beals at Pittsburgh other · than his silence when he saw—as he must have seen—Patrone substituting for Wells at the time sentence was imposed. So the case against Rossiter gets down to a permissible inference of guilt from this fact and his failure to speak.

Being an attorney—an officer of the court —it was unquestionably Rossiter's duty to apprise the court of the fraud. Yet, in reviewing his trial, we are not dealing with official duty, professional ethics, or morals. We are coldly concerned with the law to be applied to the facts and with the permissible inferences of guilt to the exclusion of everything else. If the facts were equally susceptible of inferences of innocence—innocence in respect to the specific offenses for which he was on trial—that disposes of the matter. Graceffo v. United States (C. C. A.) 46 F. (2d) 852, 853. Finding in this record no substantial evidence of facts which exclude every other hypothesis than that of guilt, we are constrained to hold the evidence does not sustain Rossiter's conviction.

The judgment of sentence against Joseph D. Donovan is affirmed; the judgments of sentence against Lester Beals and Samuel Y. Rossiter are reversed.